Matter of Destiny Q. v Poole (2023 NY Slip Op 01340)

Matter of Destiny Q. v Poole

2023 NY Slip Op 01340

Decided on March 16, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 16, 2023

535088
[*1]In the Matter of Destiny Q. et al., Petitioners,
v
Sheila J. Poole, as Commissioner of Children and Family Services, et al., Respondents.

Calendar Date:January 9, 2023

Before:Egan Jr., J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Law Offices of Danielle Neroni, Albany (Angela Kelley of counsel), for petitioners.
Letitia James, Attorney General, Albany (Chris Liberati-Conant of counsel), for respondents.

Egan Jr., J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Rensselaer County) to review a determination of respondent Commissioner of Children and Family Services denying petitioners' applications to have a report maintained by the Statewide Central Register of Child Abuse and Maltreatment amended to be unfounded and expunged.
At approximately 4:15 a.m. on March 17, 2019, a police officer on patrol observed a small child standing alone outside at the corner of 9th Street and Middleburgh Street in the City of Troy, Rensselaer County. The officer stopped and spoke to the child, who said that he was six years old and that he did not know his home address. The child added that there were no adults at home, but his siblings were, and that he knew that the front steps of his house were blue. The officer was able to locate the residence using the child's description and found the front door ajar. He and a police sergeant went into the building, entered the second-floor apartment where the child and his family lived and found the child's three siblings, ranging in age from nine months to five years, asleep with no adults present. Eventually, petitioner Quincy R. (hereinafter the father), the father of one of the children, arrived at the apartment and told officers that he had left the apartment around 4:10 a.m. to drive petitioner Destiny Q., the mother of the children, to work at a Stewart's Shops on 112th Street in the Lansingburgh section of Troy. Police subsequently spoke to the mother at her workplace, and she stated that a coworker had driven her to work and that she thought the father was watching the children. The reporting officer noted that the father had no explanation for why it took him so long to return to the apartment after taking the mother to work and, moreover, that the investigation suggested that the mother was "not being truthful." Petitioners were accordingly each arrested and charged with four counts of endangering the welfare of a child.
In addition to the criminal charges, which were eventually resolved via an adjournment in contemplation of dismissal, a report was also made to the Statewide Central Register of Child Abuse and Maltreatment alleging that petitioners had left the children unsupervised in the apartment for at least 45 minutes. The records of the ensuing investigation by the Rensselaer County Department of Social Services (hereinafter DSS) reflect that the mother gave an account of what had occurred that differed from what she had told police, telling a caseworker that the father did not live at the apartment but did watch the children while she was at work and that, on the morning of March 17, 2019, the father had arrived at the apartment with a second car that she believed had a few of his friends in it. The mother further related that the father caught up with her as she was walking to catch the bus and told her that he would take her to work, and that she had [*2]no idea that the children were alone. The report was "indicated" for maltreatment of all four children by petitioners due to inadequate guardianship and lack of supervision, and their names were placed in the Statewide Central Register.
The Office of Children and Family Services declined petitioners' requests to amend the report to unfounded, prompting petitioners to request a hearing. After the conclusion of that hearing — which covered the allegations against both petitioners at their request and at which they testified, in contrast to their previous accounts, that a since-deceased neighbor had been watching the children and that the children were left unattended when the neighbor returned to her apartment to use the bathroom — an Administrative Law Judge (hereinafter ALJ) determined that DSS had demonstrated maltreatment on the part of both petitioners. The ALJ accordingly upheld the denial of petitioners' requests and, moreover, concluded that the report was relevant and reasonably related to childcare issues involving petitioners in the future. This CPLR article 78 proceeding ensued.
We confirm. In order to establish maltreatment, DSS was obliged to demonstrate, by a preponderance of the evidence, that the physical, mental or emotional condition of the children either had been or would be in imminent danger of being impaired because petitioners had failed to exercise a minimum degree of care in providing them with appropriate supervision or guardianship (see Matter of Jeffrey O. v New York State Off. of Children & Family Servs., 207 AD3d 900, 901 [3d Dept 2022]; Matter of Tammy OO. v New York State Off. of Children & Family Servs., 202 AD3d 1181, 1182 [3d Dept 2022]; Matter of Gerald HH. v Carrion, 130 AD3d 1174, 1175 [3d Dept 2015]). Our review of the ALJ's determination that DSS had made that showing is limited to assessing whether the determination is supported by substantial evidence, a minimal standard requiring only "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; see Matter of Jeffrey O. v New York State Off. of Children & Family Servs., 207 AD3d at 901). Notably, "hearsay is admissible in expungement hearings and, if sufficiently relevant and probative, may constitute substantial evidence to support the underlying determination" (Matter of Ribya BB. v Wing, 243 AD2d 1013, 1014 [3d Dept 1997] [internal quotation marks and citation omitted]; see Matter of Tammy OO. v New York State Off. of Children & Family Servs., 202 AD3d at 1182; Matter of Charlotte MM. v Commissioner of Children & Family Servs., 159 AD3d 1081, 1083 [3d Dept 2018]).
The ALJ credited the information contained in the case file of DSS, which included the relevant police records and the investigative notes of DSS caseworkers, as well as the testimony of a caseworker, that the children were left alone by petitioners while the father [*3]took the mother to work and that one of the children wandered outside during that time. There is no question that leaving four very young children, the oldest of whom was only six years old, alone for a significant period of time in an apartment "is so inherently dangerous that it necessarily carries with it a significant risk that the children might come to some harm" (Matter of Susan XX. v Tioga County Dept. of Social Servs., 74 AD3d 1543, 1544 [3d Dept 2010]). Although petitioners presented conflicting testimony that they believed a neighbor was watching the children during that period, the ALJ found that testimony to be incredible in view of their varying accounts of their actions over time, and we defer to that credibility determination (see Matter of Tammy OO. v New York State Off. of Children & Family Servs., 202 AD3d at 1184; Matter of Cheryl Z. v Carrion, 119 AD3d 1109, 1111 [3d Dept 2014]; Matter of Susan XX. v Tioga County Dept. of Social Servs., 74 AD3d at 1544). As such, substantial evidence in the record exists for the ALJ's determination that petitioners had committed maltreatment (see Matter of Cheryl Z. v Carrion, 119 AD3d at 1111; Matter of Susan XX. v Tioga County Dept. of Social Servs., 74 AD3d at 1544-1545; Matter of Stephen C. v Johnson, 39 AD3d 932, 933-934 [3d Dept 2007], lv denied 9 NY3d 804 [2007]).
Contrary to petitioners' further argument, the foregoing also constitutes substantial evidence for the ALJ's finding "that the maltreatment is relevant and reasonably related to any future child care employment, adoption or foster care decisions regarding petitioner[s]" so as to warrant disclosing the existence of the indicated report to inquiring agencies (Matter of Debra VV. v Johnson, 20 AD3d 758, 759 [3d Dept 2005]; see Social Services Law § 422 [8] [c] [ii]). Petitioners' remaining contentions, to the extent that they are preserved for our review, have been examined and found to be wholly lacking in merit.
Clark, Pritzker, Ceresia and Fisher, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.