Matter of Naomi NN. v New York State Off. of Children & Family Servs. (2024 NY Slip Op 06635)

Matter of Naomi NN. v New York State Off. of Children & Family Servs.

2024 NY Slip Op 06635

Decided on December 26, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 26, 2024

CV-23-1402
[*1]In the Matter of Naomi NN. et al., Petitioners,
v
New York State Office of Children & Family Services et al., Respondents.

Calendar Date:November 18, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Criscione Ravala, LLP, New York City (Galen J. Criscione of counsel), for petitioners.
Letitia James, Attorney General, Albany (Sean P. Mix of counsel), for respondents.

Egan Jr., J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Ulster County) to review a determination of respondents partially denying petitioners' application to have a report maintained by the Statewide Central Register of Child Abuse and Maltreatment amended to be unfounded and expunged.
Petitioners were the foster parents of two children in April 2019, one of whom was in second grade at the time and is at issue here. On April 3, 2019, the Statewide Central Register of Child Abuse and Maltreatment received a report alleging that petitioner Naomi NN. (hereinafter the foster mother) had become frustrated with the subject child as she struggled to complete her math homework the night before and repeatedly slammed the child's face down on the table as punishment. The report further alleged that petitioner Anthony NN. (hereinafter the foster father) witnessed the foster mother's outburst and did not intervene. The Ulster County Department of Social Services (hereinafter DSS) investigated and marked the report as "indicated," finding that the foster mother had engaged in maltreatment due to inadequate guardianship, excessive corporal punishment and the infliction of lacerations, bruises and/or welts and that the foster father had engaged in maltreatment due to inadequate guardianship.
Respondent Office of Children and Family Services conducted an administrative review and declined petitioners' request to amend the report to be unfounded. The matter was accordingly set down for a hearing that, after several adjournments, occurred in April 2021. The Administrative Law Judge (hereinafter ALJ) who presided over that hearing [FN1] subsequently determined that, although DSS had not established by a fair preponderance of the evidence that the foster father had committed the alleged maltreatment, it did establish maltreatment on the part of the foster mother. The ALJ accordingly granted petitioners' request to amend the report to "unfounded" with regard to the foster father and denied it with regard to the foster mother. The ALJ further concluded that the report was relevant and reasonably related to childcare issues involving the foster mother, warranting disclosure of the indicated report's existence to provider and licensing agencies making inquiry about her in the future. Petitioners commenced this CPLR article 78 proceeding seeking to annul the determination with respect to the foster mother, and Supreme Court transferred the matter to this Court (see CPLR 7804 [g]).
In order to establish maltreatment, DSS was obliged to demonstrate, by a preponderance of the evidence, that the physical, mental or emotional condition of the subject child either had been or would be in imminent danger of being impaired because the foster mother had failed to exercise a minimum degree of care in providing the subject child with appropriate supervision or guardianship or that she used excessive corporal punishment (see Matter of [*2]Kristen DD. v New York State Cent. Register of Child Abuse & Maltreatment, 220 AD3d 1129, 1130 [3d Dept 2023]; Matter of Destiny Q. v Poole, 214 AD3d 1183, 1185 [3d Dept 2023]; Matter of Jeffrey O. v New York State Off. of Children & Family Servs., 207 AD3d 900, 901 [3d Dept 2022]). Our review of the ALJ's determination that DSS made that showing involves an assessment of whether the determination is supported by substantial evidence, a minimal standard demanding "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; see Matter of Kristen DD. v New York State Cent. Register of Child Abuse & Maltreatment, 220 AD3d at 1131; Matter of Raymond I. v New York State Off. of Children & Family Servs., 214 AD3d 1147, 1148 [3d Dept 2023]). Of particular note here, "hearsay is admissible in expungement hearings and, if sufficiently relevant and probative, may constitute substantial evidence to support the underlying determination" (Matter of Destiny Q. v Poole, 214 AD3d at 1185 [internal quotation marks and citations omitted]; see Matter of Kristen DD. v New York State Cent. Register of Child Abuse & Maltreatment, 220 AD3d at 1131).
Here, the hearing evidence against petitioners consisted of the "connections stage summary," the investigation progress notes prepared by the assigned DSS caseworker or her coworkers, and photographs of the subject child taken in April 2019. The caseworker herself no longer worked for DSS by the time of the hearing and did not testify.[FN2] The progress notes nevertheless reflected that the subject child repeatedly and consistently described — to the caseworker as well as childcare workers — an incident in which the foster mother became angry when she had trouble doing her homework and "banged her head on the table." The caseworker and staff members at the subject child's daycare observed injuries on the subject child's face in the wake of that incident, and photographs taken of the subject child on April 4, 2019 clearly show bruising on the left side of her face, under her left eye and on her upper left ear. Moreover, petitioners' biological child was interviewed by the caseworker and confirmed that they used corporal punishment on the subject child, relating, among other things, how the subject child would "get[ ] a smack" whenever she did not do her homework correctly and how petitioners sometimes used a wooden "whipping" spoon on her. The subject child was removed from the care of petitioners shortly after that interview and, when the caseworker asked the subject child about discipline by petitioners about two weeks later, she also described how petitioners would use a wooden spoon to spank her.
Petitioners did testify. The foster mother stated that she never slammed the subject child's face onto a table or otherwise struck the child, while the foster father stated that he was not in the room when [*3]the alleged incident occurred but that neither he nor the foster mother used corporal punishment. The foster mother further described how the subject child "had a habit of lying" and suggested that she may have sustained injuries when she threw herself onto the floor on the evening of the alleged incident. Both she and the foster father further testified that their biological child was lying when he described corporal punishment with a wooden spoon.
The ALJ credited the subject child's hearsay statements to the caseworker over petitioners' testimony, pointing out, among other things, the lack of any explanation from petitioners as to why both their biological child and the subject child would give consistent stories about corporal punishment with a wooden spoon if it had not occurred and noting that the injuries documented in photographs of the subject child were "more consistent" with having her face slammed into a table than falling onto the floor. The ALJ went on to find that, especially in view of the undisputed special needs of the subject child and the fact that corporal punishment by foster parents is impermissible (see 18 NYCRR 441.9 [c]), the punishment meted out by the foster mother constituted maltreatment in that it was inappropriate, excessive and impaired the subject child's physical and emotional health. We accord deference to the ALJ's assessments of credibility and are satisfied that the "sufficiently relevant and probative" hearsay evidence presented by DSS, particularly when coupled with the photographic evidence of the subject child's injuries, constituted substantial evidence for the ALJ's determination (Matter of Ribya BB. v Wing, 243 AD2d 1013, 1014 [3d Dept 1997] [internal quotation marks and citation omitted]; see Matter of Morales v Velez, 147 AD3d 559, 559 [1st Dept 2017]; Matter of Vincent KK. v State of N.Y. Off. of Children & Family Servs., 284 AD2d 777, 777-778 [3d Dept 2001]; compare Matter of Theresa WW. v New York State Off. of Children & Family Servs., 123 AD3d 1174, 1176 [3d Dept 2014]).
Finally, in view of the foster mother's refusal to take responsibility for her maltreatment of the subject child or otherwise recognize the damage such behavior might cause to a particularly vulnerable foster child, substantial evidence also exists "for the ALJ's finding that the maltreatment is relevant and reasonably related to any future child care employment, adoption or foster care decisions regarding [the foster mother] so as to warrant disclosing the existence of the indicated report to inquiring agencies" (Matter of Destiny Q. v Poole, 214 AD3d at 1186 [internal quotation marks and citation omitted]; see Social Services Law § 422 [8] [c] [ii]; Matter of Ribya BB. v Wing, 243 AD2d at 1015). To the extent that they are not addressed above, we have examined petitioners' remaining arguments and found them to be meritless.
Garry, P.J., Clark, Pritzker and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed[*4], without costs, and petition dismissed.

Footnotes

Footnote 1: The ALJ's determination also notes that she had been designated by respondent Commissioner to make such decisions on the Commissioner's behalf.

Footnote 2: The ALJ raised the possibility of issuing a subpoena for the caseworker to obtain her testimony, but the record gives no reason to believe that petitioners attempted to avail themselves of that opportunity.